Will the clerk please call the second case? 216-0368, Wayne Walker v. Superior Ambulance, Illinois, N.C. Counsel, you may proceed. Good afternoon, Justices. I'm going to plead the court, that's all. The plaintiff files this appeal. Counsel, would you tell us who you are first? Because it's to the court of charge for the plaintiff, Judge. This is the case in which we believe we commissioned a final day ruling which was against the manifesto weight of the evidence with respect to TTE and or maintenance of vocational rehabilitation. There's no dispute as to the accident. The patient was injured on August 25, 2011. And subsequent to that injury, he underwent significant surgical procedures. Number one, he ended up having L5-S1 laminectomy with a bilateral paratectomy for anatomy and an intrabody fusion. Approximately eight months later, he ended up having a revision of that surgery, which was a spinal fusion and instrumentation of the L5-S1 with a bone graft and morphogenic protein. I believe the significance of these two surgeries is that the complaints, the subjective complaints by the plaintiff were all consistent with the objective findings from the medical and personality treating and or examining the plaintiff. With respect to his condition, even Dr. DeNine, the independent medical examiner on behalf of the defendant, in August of 2012 found objective findings consistent with complaints of the back, and those objective findings consistent with the complaints of the back. And there was nothing to suggest that his complaints did not correlate with those objective findings. Approximately eight months later, he again self-examined the plaintiff. At which time he re-examined the plaintiff and found some complaints of pain on the right side, buttocks pain, leg, thigh pain, and a positive histo- Unless I'm missing something, the issues in this case are not causation. The issues in this case are failure to pay TTD after July 8, 2013, and the failure to provide vocational rehabilitation. Can we get to that issue and get away from causation for a while? My point in bringing that out is that everything that these doctors found, Dr. DeNine, Dr. Singh, his treating physician, and his fellow FCE, was consistent with his subjective complaints from an orthopedic standpoint and from a neurological standpoint. Well, now that you mention Dr. Singh, Dr. Singh obviously discharged the claimant on July 8th. The commission relied on that, in which he opined that was the date on which the claimant was at MMI. Is that correct? Yes. Would that benefit from further medical treatment, according to Dr. Singh? With the idea that he would undergo a functional capacity exam to see what the extent of his condition was. As a result of that, he underwent a functional capacity exam. And the basis of that functional capacity exam was the basis of Dr. Singh's restrictions that he placed on him, as well as Dr. DeNine's restrictions that he placed on him, after he examined Mr. Singh's MMI plaintiff and found that there was not any amount of physical therapy that would make this person any better, and placed him on sedentary position, which leads us into the fact that was this job offer that was offered to Mr. Walker, the plaintiff? How could I have the job offer? Well, if we look at the functional capacity exam that was taken, which was a valid functional capacity exam, those particular findings that were made on that functional capacity exam clearly indicate that he could only do certain things on an occasional basis. And those certain things that he was supposed to do with respect to his valid job offer were inconsistent with that job offer. He was supposed to crouch, squat, bend, and according to their witness, Mr. Jogan, he indicated that 60 to 70 percent of the day he works on these ambulances, which was part of the job offer supported. 60 to 70 percent of the day is 4.8 hours to 5.6 hours a day. According to the valid FCE, he was to crouch only a half hour to two and a half hours a day. He was to squat a half hour to two and a half hours per day. And he was to bend a half hour to two and a half hours a day. Thus, that job offer far exceeded the restrictions that were placed on him by the valid FCE. In fact, Mr. Jogan, their witness, indicated that he was supposed to constantly bend and constantly be in awkward positions. He was supposed to have maneuvering inside and outside of the ambulance. He was supposed to constantly squat, bend on a regular basis. This was obviously in excess of the restrictions that were placed on him by his valid FCE and the restrictions that were placed on him even by any kind of medical examiner, Dr. Gennady, who says he's got to do sedentary work. There was issues that were brought up with respect to the FCE being done before the work conditioning program, but I think Dr. Singh addressed that by saying that the work conditioning only would relate to the lifting requirements that he would be able to do, and none of the bending and the squatting and kneeling that was necessary for this job offer that was allegedly within his restrictions. I think the testimony and cross-examination by Mr. Jogan was something that was contrary to what Mr. Jogan did and what the valid job offer said it was. He again said that he's got to stretch all the time, he's got to bend, he's got to squat, he's got to kneel, totally inconsistent with the valid functional capacity exam. So to suggest that he was not intolerant to vocational rehabilitation because it was a valid job offer is just inconsistent with what the medical evidence shows, what a valid FCE shows, and we know that if there's an invalid FCE, that is held terribly against the plaintiff under these types of circumstances. But this was a valid FCE. We have subjective complaints found that were consistent with all the objective medical testimony and medical evidence that was presented, including a CAT scan, which was used by Dr. Ghanaian to set forth his restrictions, and thus we believe that the termination of any vocational rehabilitation or maintenance after July 8, 2013 was just contrary to the manifest weight of the evidence. And I think it showed by the functional capacity exam. And there's a number of issues that were brought before the commission, obviously, and there was some serious credibility findings, if you would, with respect to the testimony by the team. I mean, taken to its logical, I mean, the commission thought your client was Pinocchio. He said he was bribed by, he bribed a state trooper when, in fact, he got a ticket, and denied that he ever did. I mean, they didn't believe a word this man said. Yeah, I'm not standing up here to say my client was not foolish. Whether that came up, I have no idea. It was as surprising to me as it was the problem with the consulate. Well, it was important to the commission on the dispute that existed between he and Joseph as to why he rejected their job offer. According to Joseph, he rejected it because he said it was beneath him. According to him, he said he rejected it because he couldn't tolerate it within his restrictions. And the commission said, we believe Joseph. If you look at those restrictions and you look at the restrictions that were set forth by Mr. Joseph as to what he would be, what he would have to do, and you look at the F.C.E. that sets forth what he can do on an occasional basis, those were outside his restrictions. And from that aspect, we have to look at what he has to say as true. And I know there's a credibility issue. But if you look at the credibility, it really does not negate the objective medical evidence that was presented by all medical providers and by all testing that was done, including the CAD scan, the MRIs, the valid F.C.E., and Dr. Gennady's own testimony report that he set forth. So with that in mind, even though there was some credibility issues, I don't believe the credibility issues really negate the condition that this person is in and the ability for him to have undertaken that poor job, which was clearly outside the restrictions, not only of the valid F.C.E., but also of Mr. Joseph's own testimony, would indicate that there was a contradiction between those valid F.C.E.s and his M.D. What was the date of the F.C.E.? I believe it was sometime in March of 2013, your Honor, which was done sometime before the work condition. And for that reason, we believe that the decision by the Commission was against the manifest way of the evidence because the manifest way of the evidence clearly shows that this person's medical condition in relation to the F.C.E. was outside the restrictions that were placed by whoever was outside the work and therefore that would have to be performed as a court under those circumstances. And with respect to the issue of penalties, we believe that for all things taken into consideration, this one, based on the testimony of Mr. Joseph and the medical testimony, we believe penalties would have been warranted under these circumstances because if you separate the credibility and you separate the objective medical evidence, which is consistent with the subject of complaints, then that's what we really have to look at under these circumstances. Thank you very much. Thank you, Counsel. We have time in reply. Counsel, you may respond. Thank you. Good afternoon, your Honors. Counsel. Rory McCann on behalf of Superior Ambulance. I'm asking that you confirm the Commission's decision in its entirety. And in particular, I will highlight the credibility findings which were referenced during Counsel's comments. The Commission noted that there was, number one, multiple instances where the petitioner demonstrated both a lack of veracity and forthrightness. Number two, he demonstrated a serious credibility deficit, which informs all issues in dispute. Number three, the credibility deficit renders the extent of residual complaints and any prescriptions or restrictions based on those complaints highly suspect. So in sum, what the Commission is saying is that his serious credibility deficit was, in a sense, so serious that it contaminates the entire record, including the medical evidence that was reviewed. And as we know, in any office visit note, the format that the doctors use is the SOAP method, Subjective Objective Assessment Plan. And the subjective is an important component. They have to receive information about symptoms and what's going on with the patient in order to accurately assess and develop a plan with that patient. But what's your response to his argument that the FCE contradicted Dr. Singh's opinion that the employment reached an MMI on July 8th, 2013? First, the FCE was prescribed by Dr. Singh as an initial sort of to get a sense of where he was at physically. What was the date of the FCE? June 6th, 2013, Your Honor. June 6th, 2013. An FCE that says what? He can do what? Light-duty three pounds, I believe. He's at a light physical demand level. He did participate in a limited sense in what conditioning. He stopped attending sessions at the end and was discharged for failure to attend. What level did he reach when he didn't? He was, according to the therapist, lifting 40 pounds, 30 pounds overhead. And, again, discharged for failure to attend. Never mind that. What was his rating, light to medium duty? That would be consistent with light to medium. Okay. The opponent is making an issue, not making an issue, but he's asking the court to look at the FCE objectively, even though he, you know, didn't finish or whatever it was that program was, with a job offer. And he went through and said the job offer wasn't valid based on those objective findings or conclusions. Well, I would say that... What does that have to do with his credibility? Well, first of all, his credibility affected what was represented to the medical doctors in addition to what they were really assessed at, including Dr. Singh at the light physical demand level. He made his representations to the doctors, and we outline that in our brief. Okay. And just to summarize, March 11, 2013, he's showing symptomatic improvement. He's given a 10-pound light duty job offer. No cane was prescribed. We make the light duty job offer three days later. He shows up to his IME and work with a cane, self-prescribed. He returns to Dr. Singh at the end of March, tells him that he can't take medication at work and that his employer is not letting him take medication. He later concedes that was false. Dr. Singh then adds a no driving restriction, so he offered transportation to work as an accommodation. He returns shortly thereafter and gets a complete off work note from Dr. Singh. In the midst of that, he also falsely reported that he slipped at work to a physical therapist.  He also reported using a cane. Then, of course, there was the testimony wherein he falsified and he lied, essentially. I'm not going to – there's no other way to describe it. He lied about driving a state trooper in which he was sitting in a car for eight hours driving. So here's a gentleman who says that he couldn't sit or stand for 10 minutes at a time, and we have him in Omaha driving – we have him driving to Omaha, and then ultimately he lies about driving a state trooper. So that speaks a little bit to why the commission had trouble assessing where this man was at physically. He had a one-level fusion and a revision fusion. He's not a quadriplegic. So it's not clear what his capacity is just based on what an FCE is, if he's not going to provide accurate information to his doctors or the commission when he's given the opportunity to try his case and tell a story. So in other words, the conclusion, the FCC – or FCC, probably – that FCE can't be relied upon because the input is questionable. The input is faulty, it's questionable. It also was prudent to his work conditioning, which he didn't provide full effort for. So when he returned to Dr. Singh after not going to work conditioning, Dr. Singh just – the treating physician essentially just says, okay, well, if you're not going to put forth the effort in rehabilitation – and that is another aspect of the commission's decision, is he did not put forth an adequate effort to his own rehabilitation. His concern was clearly with maximizing benefits and time off. I think the record speaks to that, given all the credibility issues and findings. Based on that, unless any of the other justices have questions. We do. Thank you. Thank you. Dr. Singh, you may reply. Very quickly, the FCE is an important factor. It is a valid FCE, and that's something that has to be taken into consideration, of course.  Medium, medium, or large? Light to medium work? The FCE said it can be medium to light work. However, it specifically says on page C624 of the record what you can do occasionally. And the occasionally is five to two and a half hours a day. My point is it has nothing to do with the lifting. It has everything to do with the crouching, the bending, and the stooping. And that's what you can do only occasionally, a half hour to two and a half hours a day. The testimony by Mr. Joe had indicated that he's got to do it 60 to 70 percent of the time, which takes him outside those restrictions. That's four and a half, that would be 4.8 hours to 5.6 hours a day. So that is against the recommendations by the FCE. The idea that the work conditioning program was, the work conditioning was done after the FCE is irrelevant to the stooping, the bending, and the kneeling. Dr. Singh has specifically said that in the record, that the work conditioning only would pertain to the lifting. There was really no lifting that was going to be performed as reported other than maybe sweeping the room. So it's really the significance of that particular job was the bending, the stooping, and the crawling, which were really outside the restrictions that were imposed by the FCE. Dr. Singh didn't condition his discharge and place him in MMI and release him to work on July 8, 2013, based on the FCE. He conditioned it based upon the light to medium categories delineated in the work conditioning discharge of June 30, 2013. What did June 30 say he could do? Well, his discharge was based on the FCE. It was a deadline that was based on... He said specifically the category, he released him to work restrictions in the light to medium category as delineated in the work conditioning discharge report of June 30, 2013. That came 24 days after the FCE and with a report of the physical therapist saying that he progressed to the point where he could lift and carry 40 pounds and lift 30 pounds overhead with 10 repetitions. There was an amendment in June of 2013 by Dr. Singh that clearly indicated that specified that the work conditioning was only... I'm referring to his discharge on July the 8th, not June. That is correct. However, the lifting requirement that he imposed upon him is something that was not even necessary according to the respective reporter's job. The FCE was a significant part, and Dr. I believe Singh said that his restrictions would be comparable to what the FCE was. And I think he tried to make a distinguishing factor that the FCE in part refers to the lifting requirements and then also in part to the bending, the stooping, and the crouching as set forth in the valid FCE. And I think Dr. Singh made that distinguishing in his addendum to the fact of what the work conditioning program would have entailed and what it ultimately would have resulted. And in addition, you know, Dr. Ghani, his own, they're all treating, their own examining doctor clearly indicates that there's not any amount of physical therapy that's going to help this guy because of his condition with the L5S1, and he should be at a sedentary level. And that's based on an objective medical evidence because Dr. Ghani did not submit his opinion until he reviewed the CAT scan. It wasn't based on his clinical exam or the patient or the plaintiff's complaints. It was based on a clear diagnostic finding on the CAT scan itself. There was never any indication by any of the medical personnel that this man was malignant, that his symptoms far exceeded his complaints of pain. There was nothing ever said by Dr. Singh or by Dr. Ghani or even the physical therapist. Again, I'd like to emphasize that was credibility an issue with respect to things that he may have said, yes. However, it certainly does not negate the ability of him to have been able or not to have been able to perform that job as a court. And it doesn't at all negate the fact that he has clear, non-objective problems consistent with his complaints. It's not as if we can't believe this guy because he complains he's got pain in his back and no one can find anything wrong. Every doctor found something wrong, including their own doctor. Thank you, counsel. And for that reason, I ask the Justice Department to reverse the commission and find control of the plaintiff. Thank you very much. Thank you, counsel, both. This matter will be taken under advisement. Benton Disposition shall issue.